NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID LEE WOMACK,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM J. MOLEINS, et al.,<br><br>Defendants. | Civ. No. 10-2932<br><br>**OPINION** |

THOMPSON, U.S.D.J.

      This matter comes before the Court upon the Motion of Defendants Christopher Holmes, William J. Anderson, and R. Makarski[1] (collectively, "Defendants") to Dismiss Plaintiff David Lee Womack's First Amended Complaint in lieu of an Answer. (Doc. No. 83). Plaintiff opposes. (Doc. No. 89). The Court has issued the Opinion below based on the parties' written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Defendants' Motion to Dismiss will be granted.

BACKGROUND

      Plaintiff's action alleges several 42 U.S.C. § 1983 claims based on assaults, improper visual cavity inspections, and other retaliatory harassment conducted by Defendants against Plaintiff while Plaintiff was incarcerated in the New Jersey State Prison ("NJSP").

---

[1] Plaintiff's Amended Complaint spells this officer's name as "Markarski," while the Defendants' Motion to Dismiss brief refers to the officer as "Makarski." Since presumably Defendants' counsel knows how to spell his client's name, the Court uses Defendants' spelling.

1

Plaintiff asserts that in December 2007, while he was housed in the Management Control Unit ("MCU") at NJSP and on suicide watch, four NJSP corrections officers assaulted him. (Doc. 39 at ¶ 26). Afterwards, Plaintiff filed a grievance requesting an investigation, which went unanswered. (*Id.* at ¶¶ 27-28). Plaintiff claims that corrections officers allowed another inmate to assault him in retaliation for reporting the previous assault. Specifically, Plaintiff alleges that in August 2009, as he was being moved into an outdoor exercise pen, one of the Defendants who allegedly assaulted Plaintiff confronted him about "writing people up" and warned that "somebody" was going to beat Plaintiff. (*Id.* at ¶¶ 29-33). Afterwards, while Plaintiff was locked in his individual exercise cage, another inmate broke into Plaintiff's cage and attacked him. (*Id.* at ¶¶ 34-39). Plaintiff states that he fought in self-defense against the inmate for 40 minutes before corrections officers stopped the fight. (*Id*. at ¶¶ 40-41). Both inmates were seriously injured, and Plaintiff was subsequently disciplined by NJSP authorities. (*Id*. at ¶¶ 42-44). Plaintiff appealed the decision but no action was taken by NJSP officials. (*Id*. at ¶¶ 45-46).

In addition, Plaintiff asserts that, as a precondition to meeting with his attorney and to speaking with his case manager at the Federal Bureau of Prisons, Plaintiff was forced to submit to improper visual cavity inspections in September and October of 2011 that were in violation of N.J.A.C. 10A:3-5.7(C)(1), which requires such inspections to be conducted only "[a]t a location where the search cannot be observed by unauthorized persons." (*Id*. at ¶¶ 47-71). Plaintiff alleges that in both instances, he was forced to submit to a visual cavity search in an open and public area, in full view of other inmates' cells. (*Id*. at ¶¶ 54-57, 71). Plaintiff refused to submit to the searches and thus missed the scheduled meeting with his lawyer and call with his case manager. (*Id*. at ¶¶ 57, 72). After refusing to submit to the improper search, Plaintiff was disciplined for failure to obey a direct order. (*Id*. at ¶¶ 58-60). At the disciplinary hearing,

Plaintiff argued that the order to submit to the strip search was in violation of NJDOC regulations and an act of retaliation, to which the hearing officer, Defendant Makarski, allegedly responded, "You are a convicted felon. I'm quite sure this was not your first, and will not be the last time you will have inmates look at your ass." (*Id*. at ¶¶ 60-61). Afterwards, Plaintiff was sentenced to twice the allowable maximum disciplinary penalty for such an offense. (*Id*. at ¶¶ 62-65). Plaintiff appealed the disciplinary decision, which was reviewed and affirmed by Defendant Anderson. (*Id*. at ¶ 66).

At the time of the events, Defendants Anderson and Holmes were NJSP Assistant Superintendents, and Defendant Makarski was a hearing officer. (*Id.* at ¶¶ 8-15). Plaintiff alleges that Defendant Makarski approved of unconstitutional conduct when he imposed an excessive disciplinary sanction against Plaintiff after Plaintiff refused to submit to an improper strip search. (*Id*. at ¶¶ 47-65). Plaintiff also claims that Defendant Anderson consented to unconstitutional practices and acted with deliberate indifference by upholding the disciplinary sanctions imposed upon Plaintiff and by failing to remedy the alleged unconstitutional acts of the corrections officers who initially sanctioned Plaintiff. (*Id*. at ¶¶ 88, 95). Lastly, Plaintiff asserts that Defendant Holmes acted with deliberate indifference by failing to act upon Plaintiff's initial grievance against the four corrections officers who allegedly assaulted him. (*Id*. at ¶ 79).

On June 9, 2010 Plaintiff filed his initial Complaint. (Doc. No. 1). On August 21, 2012, pro bono counsel was appointed to represent Plaintiff, and Plaintiff's First Amended Complaint was filed on June 3, 2013. (Doc. No. 23, 39). All of Plaintiff's claims are asserted against Defendants solely in their individual capacities. (Doc. No. 39 at 2-3). Defendants Anderson, Holmes, and Makarski were served on July 22, 2014, September 10, 2014, and August 28, 2014,

3

respectively (Doc. No. 70, 76, 82). On October 15, 2014, these three Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint, which Plaintiff opposes. (Doc. No. 83, 89).

## DISCUSSION

A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 56 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The court may disregard conclusory legal allegations. *Id.* Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). Such a claim requires more than a mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct;" the facts must allow a court reasonably to infer "that the defendant is liable for the misconduct alleged." *Id.* at 210, 211 (quoting *Iqbal*, 556 U.S. at 678–79).

B. Analysis

    i.    *Respondeat Superior*

Defendants Anderson and Holmes assert that Plaintiff's claims against them must be dismissed because the Amended Complaint does not allege that these Defendants were

personally involved in the alleged unconstitutional conduct. Instead, they assert that Plaintiff's claims against them are based on an impermissible theory of *respondeat superior*.

Section 1983 allows an injured plaintiff to bring suit against every person who, under color of state law, "subjects, or causes to be subjected" the plaintiff to a deprivation of a federally protected right. 42 U.S.C. §1983. However, "[a] defendant in a civil rights action must have *personal involvement* in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988) (emphasis added). Personal involvement can be shown through allegations that the supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316 (3d Cir. 2014). "To establish knowledge and acquiescence of a subordinate's misconduct, a plaintiff must allege the defendant's (1) contemporaneous knowledge of the offending incident or knowledge of similar incidents in the past, and (2) actions or inactions which communicated approval of the subordinate's behavior." *Broadwater v. Fow*, 945 F. Supp. 2d 574, 588 (M.D. Pa. 2013). "A plaintiff may not allege that a supervisory defendant had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor." *Id*. Instead, the supervisory defendant must have actual knowledge of the misconduct, but knowledge may be inferred from the circumstances. *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193–94 (3d Cir. 1995). Lastly, allegations of participation or actual knowledge and acquiescence must be made with particularity. *Boykins v. Ambridge Area School District*, 621 F.2d 75, 80 (3d Cir. 1980).

Here, Plaintiff's Amended Complaint asserts that supervisory Defendants Anderson and Holmes are liable under 42 U.S.C. § 1983 because, by knowing of and failing to remedy

Plaintiff's alleged constitutional violations, they "thereby [gave] tacit approval" to such conduct. (Doc. No. 39 ¶¶ 79, 87, 95). Specifically, Count I alleges that Holmes acted with "deliberate indifference" by failing to respond to Plaintiff's initial grievance against the four officers who allegedly assaulted him. (*Id*. at ¶ 79). Counts II and III claim that Anderson acted with "deliberate indifference" by upholding Makarski's disciplinary decision and by failing to redress the allegedly unconstitutional cavity searches that prevented Plaintiff from meeting with his lawyer and speaking with his case manager at the Bureau of Prisons. (*Id*. at ¶¶ 87, 95).

However, in light of the above legal standards, Plaintiff's Amended Complaint states no facts to support personal involvement by these Defendants in the alleged violations. The Defendants did not participate in or direct the improper conduct, and neither Defendant appears to have even been present during the assault or the searches. Any knowledge these Defendants had was the result of grievances or appeals filed after the violation had already occurred, which is insufficient to support the requisite knowledge and acquiescence. *See Jackson v. Fed. Bureau of Prisons*, No. 11-6278 (JBS), 2012 WL 1435632, at *7 (D.N.J. Apr. 25, 2012) ("Participation in the after-the-fact review of a grievance or appeal is insufficient to establish personal involvement on the part of those individuals reviewing grievances."); *Hopkins v. Bondiskey*, No. 12-5134 (JBS), 2013 WL 1144930, at *14 (D.N.J. Mar. 18, 2013); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (refusing to find personal involvement on the part of supervisors who did not respond appropriately to after-the-fact grievances); *Baker*, 50 F.3d at 1193–94 (finding knowledge and acquiescence where a supervisor was present at the scene of the alleged violation, but did not see it). Therefore, claims against Anderson and Holmes will be dismissed.

ii.     *Failure to State a Claim*

Defendants also assert that Plaintiff's claim against Makarski must be dismissed for failure to plead all elements of a Sixth Amendment denial of access to counsel claim.

The Supreme Court held in *Bounds v. Smith* that all prisoners have a constitutional right of "meaningful access to the courts," which requires prisons to provide inmates with law libraries or assistance from persons with legal training. 430 U.S. 817, 823, 828 (1977). However, this right of access is not unlimited. Prisons are only required to provide inmates with the necessary resources to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (emphasis in original). In addition, a prisoner asserting denial of access must show that prison officials caused a past or imminent "actual injury" that hindered efforts to pursue a claim or defense. *Lewis*, 518 U.S. at 348–51, 354–55 (stating that a Plaintiff "might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known."); *see also Oliver v. Fauver*, 118 F.3d 175, 177–78 (3d Cir. 1997).

Here, Plaintiff's Amended Complaint does not identify the purpose for which Plaintiff was meeting with counsel. Specifically, Plaintiff has not alleged that he was meeting with his lawyer in order to "attack [his] sentence, directly or collaterally" or "to challenge the conditions of [his] confinement." *Lewis*, 518 U.S. 343 at 355. In addition, Plaintiff has not alleged any "actual injury" caused by the denial of access to a single meeting with his attorney. *See Oliver*, 118 F.3d at 177–78. The Amended Complaint fails to assert any facts showing that missing one

7

meeting with his lawyer impaired Plaintiff's ability to pursue a claim or defense.  *See Sturdivant v. Speziale*, No. 08-6279WJM, 2010 WL 143672, at *5 (D.N.J. Jan. 11, 2010) (granting Defendant's motion to dismiss where Plaintiff failed to allege any litigation disadvantage resulting from a one-time inability to meet with counsel).  Therefore, Plaintiff's claim against Makarski will also be dismissed.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss will be granted.  Claims against Defendants Anderson, Holmes, and Makarski will be dismissed.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.