NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

DAVID LEE WOMACK,

    Plaintiff,

    v.

WILLIAM J. MOLEINS, *et al*.,

    Defendants.

Civ. No. 10-2932

**MEMORANDUM OPINION**

THOMPSON, U.S.D.J.

    This matter comes before the Court upon the Motion of Defendant Charles Warren ("Defendant") to Dismiss Plaintiff David Lee Womack's First Amended Complaint ("FAC"). (Doc. No. 96, Mot. Dismiss).  Plaintiff opposes.  (Doc. No. 100, Opp'n Br.).  The Court has issued the Opinion below based on the parties' written submissions and without oral argument, pursuant to Local Civil Rule 78.1(b).  For the reasons stated herein, Defendant's Motion will be granted, and Plaintiff's claims against Defendant will be dismissed without prejudice.

BACKGROUND

    This action asserts claims under 42 U.S.C. § 1983 based on retaliatory assaults and improper visual cavity inspections Defendants allegedly engaged in while Plaintiff was incarcerated in the New Jersey State Prison ("NJSP").

    Plaintiff asserts that in December 2007, while incarcerated in NJSP, four NJSP corrections officers assaulted him.  After filing an unanswered grievance requesting an investigation, Plaintiff claims that corrections officers allowed another inmate to assault him in retaliation for reporting the previous assault.  According to Plaintiff, in August 2009, one of the

1

NJSP officers who assaulted him confronted him about "writing people up" and warned that "somebody" was going to beat Plaintiff.  Thereafter, while Plaintiff was locked in an individual exercise cage, another inmate broke into Plaintiff's cage and attacked him, resulting in a fight that lasted 40 minutes before corrections officers intervened.  Plaintiff was subsequently disciplined by NJSP authorities and appealed the decision, but no further action was taken by NJSP officials.

Plaintiff also identifies two instances in early September and early October of 2011, in which he was forced to submit to improper visual cavity inspections as a precondition to meeting with his attorney and to speaking on the telephone with his case manager at the Bureau of Prisons.  Plaintiff alleges that in both instances he was ordered to submit to a visual cavity search in an open and public area within full view of other inmates' cells, in violation of N.J.A.C. 10A:3-5.7(C)(1), which requires such inspections to be conducted only "[a]t a location where the search cannot be observed by unauthorized persons."  Plaintiff refused to submit to the searches and as a result missed the scheduled meeting with his lawyer and the scheduled call with his case manager.  After the first incident he was disciplined for failing to obey a direct order and sentenced to twice the allowable maximum penalty for such an offense.  After the second incident he filed a formal grievance and never received a response.

At the time of the events, Defendant Warren was an NJSP administrator.  Plaintiff alleges in Counts II and III that Defendant "acted with a culpability of at least deliberate indifference" and gave "tacit approval" of other subordinate NJSP officers' unconstitutional conduct when Defendant failed to redress Plaintiff's injuries stemming from the missed meetings with his lawyer and case manager.  (Doc. No. 39, Am. Compl. at ¶¶ 88, 95).  Count IV asserts that Defendant "encouraged, tolerated, ratified and ignored . . . patterns, practices and customs and

2

the need for more or different training, supervision, investigation or discipline" with respect to

"retaliation against filing grievances and requiring unlawful strip searches."  (*Id*. at ¶ 99).

Plaintiff further alleges that Defendant failed to "properly sanction . . . violations of protected

constitutional rights" and "ignored patterns . . . of violations of prisoners' constitutional rights

constituting a de facto policy."  (*Id*. at ¶ 101).

Plaintiff's First Amended Complaint, asserting 42 U.S.C. § 1983 claims against

Defendants solely in their individual capacities, was filed on June 3, 2013.  (Doc. No. 39, Am.

Compl.).  Defendant Warren was served on October 29, 2014 and now moves to dismiss all

claims against him.  (Doc. No. 87, Summons, 96, Mot. Dismiss).

DISCUSSION

A.  Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of the complaint, and the defendant bears the burden of showing that no claim has been

presented.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993); *Hedges v. United States*,

404 F.3d 744, 750 (3d Cir. 2005).  When assessing a Rule 12(b)(6) motion, district courts

conduct a three-part analysis, considering only the Complaint, matters of public record, and

exhibits to the Complaint.  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Pension

Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  "First, the

court must 'take note of the elements a plaintiff must plead to state a claim.'"  *Malleus*, 641 F.3d

at 560 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Second, the court must accept as

true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light

most favorable to the plaintiff but may disregard legal conclusions.  *See Fowler v. UPMC

Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  Third, the court must determine whether the

3

"facts are sufficient to show that plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting

*Iqbal*, 556 U.S. at 679).  Bare allegations of entitlement to relief and demonstrations of a "mere

possibility of misconduct" are insufficient; rather, the facts must allow a court reasonably to infer

"that the defendant is liable for the misconduct alleged."  *Id.* at 210–11 (quoting *Iqbal*, 556 U.S.

at 678–79).

B.  Analysis

Section 1983 allows an injured plaintiff to bring suit against any person who, under color

of state law, "subjects, or causes to be subjected" the plaintiff to a deprivation of a federally

protected right.  42 U.S.C. § 1983.  To establish a section 1983 claim, "a plaintiff must allege,

first, the violation of a right secured by the Constitution or laws of the United States and second,

that the alleged deprivation was committed or caused by a person acting under color of state

law."  *Little v. Cape May Cnty. Corr. Ctr.*, No. 10-567 JBS, 2010 WL 2950223, at *5 (D.N.J.

July 21, 2010) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  In addition, "[a] defendant in a

civil rights action must have personal involvement in the alleged wrongs; liability cannot be

predicated solely on the operation of *respondeat superior.*"  *Rode v. Dellarciprete*, 845 F.2d

1195, 1207–08 (3d Cir. 1988).

There are two ways to establish a supervisory defendant's personal involvement in a

subordinate's unconstitutional conduct.  First, the supervisor may be liable if he "participated in

violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had

knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Barkes v. First

Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014).  To establish knowledge and acquiescence, a

plaintiff must allege the defendant's (1) contemporaneous knowledge of the offending incident

or knowledge of similar incidents in the past, and (2) actions or inactions which communicated

4

approval of the subordinate's behavior." *Broadwater v. Fow*, 945 F. Supp. 2d 574, 588 (M.D. Pa. May 14, 2013). "[C]onstructive knowledge of a subordinate's unconstitutional conduct simply because of [the defendant's] role as a supervisor" is insufficient. *Id*. Instead, the supervisory defendant must have actual knowledge of the misconduct, but knowledge may be inferred from the circumstances. *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193–94 (3d Cir. 1995). Allegations of participation or actual knowledge and acquiescence must be made with particularity. *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980).

Second, the supervisory defendant may be liable if he, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." *Barkes*, 766 F.3d at 316. Claims alleging a failure to train, failure to discipline, or failure to supervise are a subset of such policy or practice liability. *Id*. Generally, failure to adequately train or supervise can only constitute deliberate indifference if the failure has caused a pattern of violations. *See Shawn H. v. Wienk*, No. 12-1783, 2014 WL 4792247, at *8 (W.D. Pa. Sept. 23, 2014) (citing *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011)). To hold an official liable on a claim for failure to supervise based on a policy or practice, a plaintiff "must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317. Similarly, to bring a claim of failure to train under § 1983, "a Plaintiff must (1) identify the deficiency in training; (2) prove that the deficiency caused the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency

5

constituted deliberate indifference. . . ." *Lapella v. City of Atlantic City*, No. 10-2454 JBS/JS, 2012 WL 2952411, at *6 (D.N.J. July 18, 2012).

In Counts II, III, and IV, Plaintiff appears to be alleging both types of supervisory liability claims against Defendant.

*Denial of Access Claims*

Here, Plaintiff alleges that by being subjected to an improper visual cavity search as a precondition to meeting with his attorney and to speaking on the phone with his case manager, he was denied access to counsel and to the courts in violation of the First, Sixth, and Fourteenth Amendments.  Defendant argues in the present Motion that Plaintiff's denial of access claims against him should be dismissed because (1) Plaintiff has not alleged Defendant's personal involvement in the denial of access to meetings, instead relying on an impermissible theory of *respondeat superior*; and (2) Plaintiff failed to plead all elements of his denial of access claims.

The Supreme Court in *Bounds v. Smith* held that all prisoners have a constitutional right of "meaningful access to the courts," and thus prisons are required to provide inmates with law libraries or assistance from persons with legal training.  430 U.S. 817, 824, 828 (1977).  However, this right of access is limited, and prisons are only required to provide inmates with the necessary resources to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  In addition, a prisoner asserting denial of access must show that prison officials caused a past or imminent "actual injury" that hindered efforts to pursue a claim or defense. *Id*. at 348–51.  "Actual injury occurs when a prisoner demonstrates that a non-frivolous and arguable claim was lost because of the denial of access to the courts." *Tinsley v. Giorla*, 369 F. App'x 378, 381 (3d Cir. 2010) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

6

Here, the FAC is bereft of any factual allegations suggesting that Defendant was personally involved in either of the two improper searches that prevented Defendant from meeting with his counsel and from speaking with his case manager.  There is no indication from the FAC that Defendant directed, participated in, or had contemporaneous knowledge of and acquiesced to the searches.  However, in his opposition brief, Plaintiff alleges additional facts suggesting that Defendant may have shown sufficient knowledge and acquiescence of the first search on the day that the incident occurred because the lawyer with whom Plaintiff was scheduled to meet may have spoken to Defendant about the issue before leaving the prison. (Doc. No. 100, Opp'n Br. at 5).

Generally, after-the-fact complaints are insufficient to establish the personal involvement of supervisory defendants, "[n]or can liability rest on the mere fact that a supervisory defendant failed to act favorably upon grievance or administrative appeals lodged by the prisoner." *Marks v. Corizon Health Care Inc.*, No. 13-726, 2014 WL 4252430, at *6 (M.D. Pa. Aug. 26, 2014); *see also Jackson v. Fed. Bureau of Prisons*, No. 11-6278 JBS, 2012 WL 1435632, at *7 (D.N.J. Apr. 25, 2012); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006).  But "in some circumstances, a complaint may be sufficient to put a prison official on notice of alleged continuing abuse by other prison staff and therefore may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the basis of a prisoner's claims." *Marks*, 2014 WL 4252430, at *6 (finding actual knowledge and acquiescence sufficiently pled where supervisory defendants failed to take remedial action after receiving numerous complaints that plaintiff, an epileptic prisoner, continued to be incorrectly assigned to a top bunk bed despite his medical condition requiring him to be on a bottom bunk).

Thus, if Defendant spoke to Plaintiff's lawyer while the lawyer was still in the prison

vicinity trying to meet with Plaintiff, Defendant may have had notice of an ongoing violation and

therefore demonstrated actual knowledge and acquiescence.  Accordingly, although the FAC

fails to allege Defendant's personal involvement in the improper searches, and a complaint

cannot be expanded through the plaintiff's opposition briefs, it appears that Plaintiff might be

able to further amend his complaint to sufficiently plead Defendant's personal involvement.  *See*

*Shawn H*, 2014 WL 4792247, at *7 ("it is axiomatic that a complaint may not be amended by the

briefs in opposition to a motion to dismiss.").

However, a lack of factual allegations supporting Defendant's personal involvement is

not the FAC's only deficiency.[1]  Another serious deficiency is that neither the FAC nor

Plaintiff's opposition brief sets forth any factual basis for demonstrating the element of actual

injury, which is required for a constitutional lack of access to the courts claim.  *See Lewis*, 518

U.S. at 349–51 (characterizing the actual injury requirement as one of standing).  Even though

Plaintiff is illiterate, thus limiting available avenues of obtaining "meaningful access" to the

courts to in-person meetings or conversations with those having legal knowledge, there is no

indication that missing two meetings caused plaintiff any actual injury.  *See Sturdivant v.*

*Speziale*, No. 08-6279 WJM, 2010 WL 143672, at *5 (D.N.J. Jan. 11, 2010) (granting

defendant's motion to dismiss where plaintiff failed to allege any litigation disadvantage

resulting from a one-time inability to meet with counsel); *Nyholm v. Pryce*, No. 08-4824 RMB,

2009 WL 1106528, at *10 (D.N.J. Apr. 20, 2009) (dismissing plaintiff's claim where he failed to

---

[1] The FAC also fails to assert that Plaintiff's scheduled meeting with his counsel was necessary to "attack [his] sentence[], directly or collaterally, [or] in order to challenge the conditions of [his] confinement." *Lewis*, 518 U.S. at 355 (explaining that a prisoner's constitutional right of access to the courts is not unlimited).  Again, Plaintiff includes this allegation only in his opposition brief.

allege any actual injury resulting from a seven day lack of access to legal materials).  Plaintiff

has not alleged that missing two meetings prevented him from asserting any claims or defenses

or prejudiced any of his claims in any way.  *See, e.g., Tinsley*, 269 F. App'x at 380–81 (finding

no actual injury where plaintiff failed to "point to any missed deadlines that resulted in a loss or

rejection of a legal claim"); *Duran v. Merline*, 923 F. Supp. 2d 702, 723 (D.N.J. Feb. 8, 2013)

(finding no actual injury where plaintiff alleged procedural errors resulted from inadequate

access to a legal library but there was "no evidence that such errors prejudiced his cases in any

way").

        Moreover, any general and conclusory assertions that being prevented from meeting with

a lawyer and case manager on two instances caused Plaintiff "embarrassment, frustration, and

the inability to communicate with the outside world" are insufficient to establish an actual injury,

which requires specific detriment to a legal claim or defense.  Doc. No. 100, Opp'n Br. at 6; *see*

*Little*, 2010 WL 2950223, at *6 (D.N.J. July 21, 2010) (dismissing a plaintiff's "unadorned" and

"conclusory" allegations that denial of access to the prison law library caused plaintiff to "miss[]

deadlines in unidentified actions"); *Duran*, 923 F. Supp. 2d at 723 ("Conclusory allegations that

an inmate suffered prejudice will not support an access-to-courts claim.").

        Therefore, the Court will dismiss without prejudice both of Plaintiff's denial of access

claims, Counts II and III, with respect to Defendant.

*"Failure to" Claims*

        Plaintiff also alleges that Defendant "encouraged, tolerated, ratified and ignored . . .

patterns, practices and customs and the need for more or different training, supervision,

investigation or discipline" in the context of "retaliation against filing grievances and requiring

unlawful strip searches."  (Doc. No. 39, Am. Compl. at ¶ 99).  Plaintiff appears to be asserting

the second type of supervisory liability here—policy or practice liability based on a failure to train, supervise, investigate,[2] or discipline.  Defendants argue that Plaintiff has not properly plead deliberate indifference under the Eighth Amendment and has failed to adequately identify Defendant's allegedly deficient practice.

Failure to train, discipline, and supervise are assessed under the same deliberate indifference standard.  *See Christopher v. Nestlerode*, 240 F. App'x 481, 489 n. 6 (3d Cir. 2007).  Deliberate indifference "is a stringent standard of fault," requiring a showing that a defendant "disregarded a known or obvious consequence of his action."  *Drake v. Andruczyk*, No. 08-4249, 2011 WL 1402158, at *5 (D.N.J. Apr. 13, 2011) (quoting *Connick*, 131 S. Ct. at 1360).  To establish deliberate indifference, a plaintiff must show that policymakers were on actual or constructive notice that flaws in their training or supervision caused subordinate officials to violate citizens' constitutional rights, and such notice generally requires contemporaneous knowledge of an incident or knowledge of a prior pattern of similar incidents and circumstances.  *See id.*; *Connick*, 131 S. Ct. at 1360 ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."); *Shawn H.*, 2014 WL 4792247, at *8.

Here, the FAC fails to properly plead a claim of failure to train or supervise under the Eighth Amendment.  First, Plaintiff has failed to allege a sufficient factual basis to reasonably infer Defendant's deliberate indifference to known or obvious risks.  Plaintiff has not alleged Defendant's direct knowledge of any violations nor has Plaintiff pled a pattern of violations sufficient to put Defendant on notice of deficiencies in training or supervision likely to cause

---

[2] To the extent Plaintiff alleges a failure to investigate claim under section 1983, "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim."  *Nyholm,* 2009 WL 1106528, at *6 (collecting cases).

violations of constitutional rights.  The FAC identified only two improper searches by two different officers one month apart, without any further indication that the practice was ongoing or widespread.  *See, e.g.*, *A.M. ex rel. J.M.K, v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572 (3d Cir. 2004) (finding a genuine dispute of material fact as to deliberate indifference where, among other things, defendant was alerted to physical assaults suffered by plaintiff on over ten occasions without proper corrective action); *Niblack v. Murray*, No. 12-69120 MAS, 2013 WL 4432081, at *8 (D.N.J. Aug. 14, 2013) ("deliberate indifference failure to train is not established by . . . proving that an otherwise sound training program occasionally was negligently administered").

Second, Plaintiff, in his FAC, has not "identif[ied] a supervisory policy or practice that the supervisor failed to employ."  *Barkes*, 677 F.3d at 317; *see also Niblack*, 2013 WL 4432081, at *7, 9 (refusing to find liability where plaintiff "does not identify any specific practice, procedure, policy, rule, regulation or ordinance implemented by the supervisory Defendants, which purportedly generated the alleged widespread abuse and misbehavior") ("Plaintiff must identify a specific deficiency, not simply general laxness or ineffectiveness of training."). Therefore, Plaintiff's failure to train, supervise, and discipline claim, Count IV, will also be dismissed without prejudice with respect to Defendant.

## CONCLUSION

For the reasons above, Defendant Charles Warren's Motion to Dismiss will be granted, and all of Plaintiff's claims against Defendant will be dismissed without prejudice.  However, Plaintiff will be granted leave to file a further amended complaint within thirty days if he can correct the deficiencies outlined above.  An appropriate Order follows.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

11